UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KALEASHA MILES<br>6 Peachfield Lane<br>Willingboro, NJ 08046<br><br>          Plaintiff,<br><br>v.<br><br>REALOGY HOLDINGS CORP.<br>175 Park Avenue<br>Madison, NJ 7940<br>          and<br>TITLE RESOURCE GROUP LLC<br>3001 Leadenhall Road<br>Mount Laurel, NJ 08054<br>          and<br>CONTEMPORARY STAFFING<br>SOLUTIONS, INC.<br>161 Gaither Dr.<br>Marlton, NJ 08054<br><br>          Defendants. | CIVIL ACTION<br><br>CASE NO.: _____<br><br><u>**JURY TRIAL DEMANDED**</u> |

## CIVIL ACTION COMPLAINT

Plaintiff, Kaleasha Miles, (*hereinafter* referred to as "Plaintiff" unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.), the Pregnancy Discrimination Act ("PDA"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that she was unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.  This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3.  This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.  Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the District of New Jersey for this action.

5.  Plaintiff is proceeding herein under the Title VII/PDA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.  Plaintiff is an adult individual, with an address as set forth in the caption.

2

8. Defendant Title Resource Group, LLC (*hereinafter* "TRG") is a Delaware-incorporated entity which provides title and settlement services, headquartered at an address as set forth in the above-caption (the location at which Plaintiff worked).

9. Defendant Realogy Holdings Corp. (*hereinafter* "Realogy") is the parent company of TRG and a for-profit corporation, incorporated under the laws of Delaware, with an address as set forth in the above-caption.

10. Defendant Contemporary Staffing Solutions, Inc. (*hereinafter* "Contemporary Staffing Solutions") is a Pennsylvania-incorporated entity, providing staffing solutions for clients by facilitating agreements from third-party vendors, operating out of offices in a number of states, including New Jersey, with an address as set forth in the above-caption.

11. Plaintiff was placed by Defendant Contemporary Staffing Solutions to work within Defendant TRG's Mount Laurel, NJ location, and although Plaintiff was hired and paid through Defendant Contemporary Staffing Solutions, Plaintiff was treated in all functional respects like an employee while working within Defendants TRG and Realogy. Defendants' management had the ability to manage Plaintiff, discipline Plaintiff, give directive to Plaintiff, and make decisions regarding Plaintiff's employment. Plaintiff was permitted to address her work concerns with Defendants' management and was obligated to follow the policies of Defendants. Thus, for the foregoing reasons, Defendants may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

13. Defendants are "employer[s]" within the meaning of Title VII/PDA because, at all times relevant herein, Defendants employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendants.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Plaintiff is an African-American female.

16. In or about 2012, Plaintiff was placed by Defendant Contemporary Staffing Solutions to work within Defendant TRG's Mount Laurel, NJ location.

17. Plaintiff first began working for Defendants as a Curative Specialist.

18. In or about December of 2013, Plaintiff informed Defendants' management (including but not limited to supervisor Michelle Briggs) that she was pregnant and then Defendants terminated Plaintiff later that same day; upon information and belief, Defendants' purported reason for terminating Plaintiff ("lack of work") in December of 2013 was completely pretextual.

19. On or about March 26, 2015, after Plaintiff's pretextual December of 2013 termination (described *supra*), Defendants rehired Plaintiff, and Plaintiff was again placed by Defendant Contemporary Staffing Solutions to work within Defendant TRG's Mount Laurel, NJ location, this time in a temporary to permanent position as a HUD (Housing and Urban Development) Specialist.

20. Throughout the time of her employment with Defendants, Plaintiff was a hard-working employee who performed her job well; however, Plaintiff and her African American co-

workers were subjected to discriminatory and disparate treatment by Defendant's management because of their race, including but not limited to:

    a. On at least two separate occasions, two of Plaintiff's African-American co-workers were immediately reprimanded when they did not meet their daily production quota by supervisor Steve Kulikowski (*hereinafter* "Kulikowski"); however, Plaintiff witnessed her Caucasian co-workers, in similar positions, not meet their quota on almost a daily basis, yet they were never noticeably disciplined by management;

    b. Plaintiff's Caucasian coworker(s) (including but not limited to "Maria") made racial comments towards Plaintiff, which Plaintiff specifically complained about to management, including but not limited to: Kulikowski, Manager - Michael Maronski (*hereinafter* "Maronski"), and Human Resources ("HR") Manager - Jennifer Gilliam (*hereinafter* "Gilliam"); and

    c. Plaintiff's complaints of racial discrimination/harassment were never noticeably investigated or resolved, including Plaintiff's complaint of racial discrimination less than a week before her termination (described further *infra*).

21.     In or about late 2015, Plaintiff learned that she was pregnant again.

22.     In or about early 2016, Plaintiff became ill at work due to her pregnancy and told her supervisor, Kulikowski, that she needed to go home because she was experiencing pregnancy-related health issues.

23.     On or about January 21, 2016, Plaintiff specifically complained to Defendants' management, Kulikowski (Caucasian) and Maronski (Caucasian), regarding racial discrimination that she was experiencing in the workplace due to her race, including but not limited to being

5

subjected to continuing harassment because of her race by one of her co-workers, Susan (Caucasian).

24. On or about January 21, 2016, in Plaintiff's meeting with Maronski regarding her complaint of racial discrimination (described *supra*), Maronski **agreed** that Plaintiff would not be permitted to speak to Susan in the manner Susan regularly spoke to Plaintiff (with the only difference being their respective races); and, as Plaintiff was leaving, Maronski said to Plaintiff "keep fighting the good fight" (again implying Plaintiff was going to be treated differently in Defendant's workplace because of her race).

25. On or about January 22, 2016, while working for Defendants, Plaintiff was called at work by a co-worker (Kim Kessler), who questioned if Plaintiff was pregnant; that same day multiple other employees of Defendants informed Plaintiff that the "rumor" was that she was pregnant.

26. On or about Friday, January 22, 2016, the same day Plaintiff was told about the "rumor" regarding her pregnancy, Kulikowski requested employees (including Plaintiff) to work from 8 a.m. to 8 p.m. the upcoming Monday, January 25, 2016. Plaintiff had been scheduled to begin work on January 25th at 11:30 a.m.

27. On or about Friday January 22, 2016, after being asked to start work before her regularly scheduled time (described *supra*), Plaintiff immediately told Kulikowski that she had a previously scheduled doctor's appointment the morning of January 25th and therefore, was not able to start at 8 a.m.. Plaintiff's doctor appointment on January 25th was with her OBGYN in regards to her pregnancy, and at that time Kulikowski was already aware of Plaintiff's pregnancy (described *supra*).

28. On or about Sunday, January 24, 2016, Defendants terminated Plaintiff by way of email from Defendant Contemporary Staffing Solutions, stating simply, in relevant part: "[y]our assignment has been ended."

29. On or about January 25, 2016, Defendant Contemporary Staffing Solutions called Plaintiff to inform her of her termination as a follow-up to aforesaid email, again failing to provide any grounds for Plaintiff's termination.

30. Defendants' termination of Plaintiff was completely discriminatory, as:

   a. At the time of Plaintiff's termination there was still work to be done on Plaintiff's staffing assignment (evidenced by the fact that Defendants' management was requesting employees work overtime, and furthermore, Plaintiff was a temporary to permanent employee, discussed *supra*);

   b. Defendants had terminated Plaintiff for a previous pregnancy *the same day* she told Defendants she was pregnant, showing Defendants' clear discriminatory animus towards pregnant women (described *supra*);

   c. In Defendant TRG and Realogy's Position Statement submitted to the EEOC in conjunction with this matter (also known as an "Answer"):

      i. Defendants claim Plaintiff made complaint(s) regarding discrimination because of her status as a temporary employee, which is untrue. As described *supra*, Plaintiff specifically made complaints of racial discrimination;

      ii. Defendants suggest Plaintiff was terminated in connection with a complaint Plaintiff made the week before her termination about a co-worker; however, as discussed *supra*, while Plaintiff did in fact make a

7

      complaint in the week before her termination, such complaint focused on Plaintiff's discriminatory treatment in the workplace because of Plaintiff's race; and

    iii.   Defendants state Plaintiff was terminated on January 21, 2016; however, Plaintiff worked after that date and was actually terminated days later (discussed *supra*);

31.    Plaintiff therefore believes and avers that Defendants terminated her because of her race, in retaliation for her complaints of racial discrimination, her pregnancy, Defendants failure to accommodate Plaintiff's pregnancy, and/or in retaliation for requesting and/or using pregnancy accommodations.

**Count I**
**Violations of Title VII/PDA**
**(Wrongful Termination - Gender/Pregnancy Discrimination)**
**-Against All Defendants-**

32.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33.    Plaintiff is qualified under the Title VII/PDA for protection because she was pregnant.

34.    Plaintiff requested pregnancy-related accommodations from Defendants' management, including but not limited to being allowed to miss work in order to attend doctor's appointments and leave work early when (on occasion) Plaintiff experienced pregnancy-related illness.

35.    For example, shortly before Plaintiff was terminated, Defendants' management changed her schedule at the last minute and informed Plaintiff that she needed to report to work at 8:00 a.m., instead of her regularly scheduled time of 11:30 a.m. Plaintiff requested to come

into work at 11:30, her regularly scheduled time, because she had a doctor's appointment related to her pregnancy, which was already scheduled. Rather than accommodating Plaintiff, Defendants' management terminated her employment.

36. In <u>Young v. United Parcel Serv., Inc., 135 S.Ct. 1338 (2015)</u>, the Supreme Court held that a pregnant employee is entitled to an accommodation if the employer has accommodated others similar in their ability or inability to work.

37. Upon information and belief, Defendants have accommodated other individuals with various health conditions (both severe and minor) when they were still able to perform the essential functions of their job with or without a reasonable accommodation (like Plaintiff).

38. Defendants failed to accommodate Plaintiff, when they refused to allow Plaintiff to attend a physician (OBGYN) appointment, and instead terminated her.

39. Plaintiff believes and therefore avers that she was terminated because of her pregnancy.

40. Defendants' actions of failing to accommodate Plaintiff and terminating Plaintiff because of her pregnancy constitute pregnancy discrimination and violations of Title VII/PDA.

**Count II**
**New Jersey Law Against Discrimination (NJ LAD)**
**(Gender/Pregnancy: [1] Discrimination [2] Failure to Accommodate [3] Retaliation)**
**-Against All Defendants-**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff reasserts each and every allegation from Count I as such actions in this case constitute violations of the NJ LAD.

43. It is a violation of the NJ LAD "[f]or an employer to treat, for employment-related purposes, a woman employee that the employer knows, or should know, is affected by

9

pregnancy in a manner less favorable than the treatment of other persons not affected by pregnancy but similar in their ability or inability to work." N.J. Stat. Ann. § 10:5-12(s).

44. Furthermore, the NJ LAD provides that "an employer of an employee who is a woman affected by pregnancy shall make available to the employee reasonable accommodation in the workplace..." and "[t]he employer shall not in any way penalize the employee in terms, conditions or privileges of employment for requesting or using the accommodation." *Id.*

45. Therefore, Plaintiff believes and avers she was terminated from Defendants in violation of the NJ LAD because of: (1) her pregnancy; (2) Defendants' failure to accommodate her pregnancy; and/or (3) in retaliation for requesting and/or using pregnancy accommodations.

### Count III
### Violations of 42 U.S.C. § 1981
### (Race Discrimination & Retaliation)
### -Against All Defendants-

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. During her employment with Defendants, Plaintiff was treated in a disparate and discriminatory manner as compared to her non-black co-workers (discussed *supra*).

48. Less than a week before being terminated, Plaintiff specifically complained to Defendants' higher level manager(s) about the racial disparity she was being subjected to by Defendants.

49. Plaintiff therefore believes that she was terminated because of her race and/or because of her complaints of racial discrimination.

50. These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

## Count IV
### New Jersey Law Against Discrimination (NJ LAD)
(Race: [1] Discrimination [2] Retaliation)
-Against All Defendants-

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff reasserts each and every allegation from Count III, as such actions in this case constitute identical violations of the NJ LAD.

53. Therefore Plaintiff believes and avers she was terminated from Defendants in violation of the NJ LAD because of: (1) her race; and/or (2) her complaint(s) of racial discrimination.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.  Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.  Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.  Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square
Suit 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 10, 2016